UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| THATCHER COMPANY, INC. )<br>)<br>PLAINTIFF, )<br>)<br>v. )<br>)<br>UNITED STATES, )<br>)<br>DEFENDANT. )<br>) | Court No. 20-00067 |

# COMPLAINT

Plaintiff Thatcher Company, Inc. ("Thatcher"), being the importer of record in this matter, by its undersigned attorneys, brings this action and alleges as follows:

## CAUSE OF ACTION

1. Thatcher brings this action to contest the deemed denial by U.S. Customs and Border Protection ("CBP"), pursuant to section 515 of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1515, of Thatcher's timely filed protest challenging (a) CBP's peremptory and arbitrary assessment of additional duties against Thatcher's entry of USP Kosher citric acid anhydrous that was produced in and imported from India, under claimed authority of the Antidumping and Countervailing Duty Orders ("the *Orders*") issued by the United States Department of Commerce ("Commerce") against *Citric Acid from China*;[1] and (b)

---

[1] *Citric Acid and Certain Citrate Salts from Canada and the People's Republic of China: Antidumping Duty Orders*, 74 Fed. Reg. 25703 (Dept. Commerce May 29, 2009); *Citric Acid and Certain Citrate Salts from the People's Republic of China: Notice of Countervailing Duty*

CBP's deemed denial of Thatcher's claim for duty free treatment of this entry as a qualifying product of India under the Generalized System of Preferences ("GSP").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a).

3. This Court and the U.S. Court of Appeals for the Federal Circuit have held that this Court has jurisdiction of issues identical to those raised in this action, pursuant to 28 U.S.C. § 1581(a). *See TR International Trading Company v. United States et al.*, 433 F. Supp. 3d 1329 (Ct. Int'l Trade 2020, *aff'd*, 4 F.4th 1363 (Fed. Cir. 2021).

4. Thatcher paid all liquidated duties, taxes and charges prior to commencing this action.

5. Thatcher exhausted all administrative protest remedies available to it prior to commencing this action.

## STANDING

6. Thatcher is a diversified chemical manufacturer, importer, and distributor, headquartered in Salt Lake City, Utah. It is the real party in interest, as it is the Importer of Record of the merchandise subject to this action, and it paid all liquidated duties, taxes, interest, and charges prior to the commencement of this action.

## STATEMENT OF FACTS

**Thatcher's Entries of Citric Acid Anhydrous from India**

7. The merchandise subject to this action is Daffodil® brand USP Kosher grade citric acid anhydrous.

---

*Order*, 74 Fed. Reg. 25705 (Dept. Commerce May 29, 2009) ("AD/CVD Orders"). Complaint Exhibit 1.

8. Posy Pharmachem Pvt. Ltd. ("Posy") is a manufacturer of Active Pharmaceutical Ingredient (API) excipient and food additives located in India.

9. Posy is the manufacturer of the subject merchandise.

10. Posy sold the subject merchandise to Thatcher for export to the United States.

11. Thatcher filed with CBP at the port of St. Lake City, Utah (port code 3303) four entries of Daffodil® brand USP Kosher grade citric acid anhydrous purchased from Posy, Entry Numbers EFU-00010924, entry date June 5, 2017; EFU-00011096, entry date July 4, 2017; EFU-00011344, entry date October 10, 2017; and EFU-00011476, entry date November 21, 2017.

12. Thatcher filed with CBP at the port of New York/ Newark, New Jersey (port code 4601) one entry of such merchandise, Entry Number EFU-00011542, entry date December 12, 2017.

13. Each entry claimed classification of the "citric acid" described under subheading A2918.14.0000 of the Harmonized Tariff Schedule of the United States ("HTSUS") and claimed eligibility for GSP treatment of the "citric acid" as a product of India.

14. Posy's commercial invoices, sales contracts, and packing lists described the imported merchandise at issue as "Citric Acid Anhydrous USP{United States Pharmacopeia}/Kosher/NSF {NSF International Standard}/Fine Granular" and identified the fine mesh size. *See* ECF 6-1 at 47, 49, 73, 94, 96, 120, 123, and 145 and 147.

15. Among the available certifications attesting to Posy in India as the origin of the Citric Acid Anhydrous USP/Kosher/NSF/Fine Granular subject to the entry are a Certificate of Origin issued by the Gujarat Chamber of Commerce & Industry and a "Star K Kosher"

Certification issued by a Baltimore based non-profit organization following an on-site inspection of Posy's production facility. *See e.g.*, ECF 6-1 at 121 and Complaint Exhibit 2.

16. Each entry was filed with CBP as a type 01 "consumption" entry, not as a type 03 "consumption – antidumping (AD)/countervailing duty (CVD)" entry.

17. Thatcher did not deposit antidumping or countervailing duties with the entry.

18. CBP did not reject the entry as filed.

**CBP's Groundless Conclusion that the Citric Acid Imported by Thatcher Was Subject to the *Citric Acid from China Orders***

19. During the relevant period Commerce had issued AD/CVD orders against citric acid from five countries (Belgium, Canada, China, Columbia, and Thailand).

20. During the relevant time period, Commerce had issued no AD/CVD orders against citric acid from India.

21. CBP issued a Request for Information ("RFI") (CBP Form 28), dated January 30, 2018, requesting information about the production of the citric acid anhydrous covered by entries including the subject entries. *See* Complaint Exhibit 3.

22. Thatcher submitted a response to the RFI. *See* ECF 6-1 at 26.

23. Thatcher's response to the RFI forwarded Posy's response to RFI questions 12, 13, and 14 and included (1) Posy's purchase orders and receipt of raw material from suppliers in India, that raw material being citric acid monohydrate expressly designated as being "not for medicinal use," (2) the Indian suppliers' commercial invoices, (3) Posy's documentation of receipt and quality control sampling results, (4) the dates and methods of Posy's batch-by-batch processing in India of this raw material into citric acid

anhydrous, and (5) Posy's costs of converting this citric acid monohydrate into citric acid anhydrous sold to Thatcher. *See* ECF 6-1 at 21-26.

24. In Posy's response to RFI questions 12-14, Posy stated that it lacked information as to the origin of the citric acid monohydrate that it used to manufacture the citric acid anhydrous that is sold to Thatcher. *See* ECF 6-1 at 22, 26.

25. The country of origin of the non-medical grade citric acid monohydrate that Posy purchased in India from Indian suppliers, and which it consumed in India to manufacture USP Kosher citric acid anhydrous, is not identified in the commercial documentation from Posy's suppliers. It is unknown.

26. Posy's production documentation submitted in response to the CBP's RFI established that Posy's direct costs of processing citric acid anhydrous in India exceeded 35 percent of the appraised value of the subject merchandise. *See* ECF 6-1 at 24.

27. The documentation submitted by Thatcher to CBP in response to CBP's RFI demonstrated that the crystalline citric acid anhydrous produced by Posy had a different name, character and use than the citric acid monohydrate from which it was produced.

28. Based on the information in Thatcher's RFI response, which identified no China origin for the subject merchandise or the raw material from which it was produced, CBP determined that the citric acid imported in the subject entries was subject to the *Citric Acid from China Orders*. *See* Complaint Exhibit 4.

29. On June 5, 2018, Supervisory Import Specialist ("SIS") Saheed O. Muhammed, with Customs Pharmaceuticals, Health & Chemicals Center sent a message by electronic mail to Mr. Hal Turnbow at Thatcher asserting the existence of "a suspicion of transshipment of Chinese Citric Acid to India for eventual exportation to the United States" and stating

that Customs was assessing AD/CVD on Thatcher's imports of citric acid anhydrous from Posy as a consequence. *See* ECF 6-1 at 26.

30. Notwithstanding Posy's uncontroverted commercial documentation submitted to CBP, which demonstrated Posy's production in India of the citric acid anhydrous sold to Thatcher, SIS Muhammed's June 5, 2018 message also stated that CBP had issued a Notice of Action directing Thatcher "to change your consumption entries" because "the citric acid sold to you cannot be ascertained to be a product of Indian origin."

31. SIS Muhammed's June 5, 2018 message further stated that CBP had issued a Notice of Action to Thatcher and "[u]nless Thatcher Company can substantially demonstrate [sic] the citric acid shipments in question are produced by a known Chinese supplier with a known ADD and CVD rates, the Chinese country wide rates applied to all the entries identified would stay."

32. CBP lacked any factual basis to determine that the citric acid anhydrous imported from Posy in India in the subject entries was of China origin.

33. Thatcher did not refile the entries subject to this action changing the entry type from an "01" consumption entry type to an "03" AD/CVD type entry and did not deposit of AD/CVD as requested by CBP.

34. On information and belief, at unknown points in time, CBP, *sua sponte,* extended liquidation of the subject entries without a statutory basis to do so. *See* ECF 6-1 at 38, 64, 87, 113, and 136.

35. On information and belief, at unknown points in time, CBP, *sua sponte,* suspended liquidation of the entries subject to this action without instruction from Commerce and without legal authority to do so. *See* ECF 6-1 at 38, 64, 87, 113, and 136.

36. A peer-reviewed scientific article describes the thermodynamic chemical reaction by which the molecular bonds of citric acid monohydrate, a crystalline product with an orthombic molecular structure, are broken and its molecules are reformed and substantially transformed into a separate and distinct crystalline chemical product having a different molecular structure, and known as citric acid anhydrous. *See* LaFontaine, A., Sanselme, M., Cartigny, Y., Cardinael, P., Coquerel, G., *Characterization of the transition between the monohydrate and the anhydrous citric acid*, Journal of Thermal Analysis Calorimetry, Vol. 112, Issue 1, 307 (April 2013) ("LaFontaine Journal Article"). Complaint Exhibit 5.

37. According to the LaFontaine Journal Article, the production of citric acid anhydrous from citric acid monohydrate employs a thermodynamic chemical reaction to break the atomic bonds of the citric acid monohydrate molecule to separate a water molecule, which is driven off by heat, as a result of which citric acid anhydrous forms as a new solid crystalline material with a different crystal structure.

38. Citric acid monohydrate is a chemical having the molecular formula $C_6H_{10}O_8$. It has a helical crystalline structure. It is a specific chemically-defined compound assigned Chemical Abstract Service Registry Number ("CAS Number") 5949-29-1.

39. Citric acid anhydrous is a chemically-defined compound separate from citric acid monohydrate, having a different molecular formula, $C_6H_8O_7$. It has a layered crystalline structure. Citric acid anhydrous is assigned CAS number 77-92-9.

40. As a result of these differences in molecular and crystalline structure, citric acid monohydrate and citric acid anhydrous have the following differences in physical

properties: different molecular weights, different melting points, different boiling points, different flash points, different PH, among other differences.

41. The citric acid monohydrate raw material purchased by Posy and the citric acid anhydrous imported by Thatcher have different commercial uses. Among other things, the designations "USP" and "Kosher" define the citric acid anhydrous imported by Thatcher as certified suitable for use in the pharmaceutical and food industries. In contrast, the citric acid monohydrate used by Posy as a raw material was not suitable for such use.

**Liquidation and Protest**

42. On information and belief, at no time did CBP officials consult with the U.S. Department of Commerce International Trade Administration ("ITA") concerning the scope of the *China Orders* or whether Thatcher's entries of citric acid anhydrous from India were subject to those *Orders*.

43. On information and belief, CBP officials assessed AD/CVD against Thatcher's entry of citric acid anhydrous from India based solely on the terms of the *Citric Acid from China Orders*.

44. No offices within CBP have authority to make a final liquidation determination that citric acid anhydrous produced in India from citric acid monohydrate of unknown origin is from China for purposes of the *Citric Acid from China Orders*.

45. CBP liquidated Entry Number EFU-00010924 on April 20, 2018, as entered, a so-called "no change" liquidation, a liquidation which CBP asserts it "voided" at an unknown point in time. *See* ECF 6-1 at 38.

46. CBP reliquidated Entry Number EFU-00010924 on August 17, 2018, more than 90 days after the original "no change" liquidation of the entry. The August 17, 2018 reliquidation assessed AD/CVD under the *Citric Acid from China Orders* and denied GSP duty free treatment. *See* ECF 6-1 at 39.

47. CBP liquidated Entry Number EFU-00011096 on May 18, 2018, as entered, a so-called "no change" liquidation, a liquidation which CBP asserts it "voided" at an unknown point in time. *See* ECF 6-1 at 64.

48. CBP reliquidated Entry Number EFU-00011096 on August 17, 2018, more than 90 days after the original "no change" liquidation of the entry. The August 17, 2018 reliquidation assessed AD/CVD under the *Citric Acid from China Orders* and denied GSP duty free treatment. *See* ECF 6-1 at 65.

49. CBP liquidated Entry Number EFU-00011344 on August 17, 2018, assessing AD/CVD under the *Citric Acid from China Orders* and denying GSP duty free treatment. *See* ECF 6-1 at 88.

50. Without any assertion that CBP "voided" the original liquidation of the entry on August 17, 2018, CBP reliquidated Entry Number EFU-00011344 on August 24, 2018, within 90 days of the original liquidation. The reliquidation of the entry on August 24, 2018 was, as entered, a so-called "no change" liquidation. CBP asserts it "voided" the reliquidation at an unknown point in time. *See* ECF 6-1 at 87.

51. CBP liquidated Entry Number EFU-00011476 on August 17, 2018, assessing AD/CVD under the *Citric Acid from China Orders* and denying GSP duty free treatment. *See* ECF 6-1 at 114.

52. Without any assertion that CBP "voided" the original liquidation of the entry on August 17, 2018, CBP reliquidated Entry Number EFU-00011476 on October 5, 2018, within 90 days of the original liquidation, as entered, a so-called "no change" liquidation. CBP asserts it "voided" the October 5, 2018 reliquidation at an unknown point in time. *See* ECF 6-1 at 113.

53. CBP liquidated Entry Number EFU-00011542 on August 17, 2018, assessing AD/CVD under the *Citric Acid from China Orders* and denying GSP duty free treatment. *See* ECF 6-1 at 137.

54. Without any assertion that CBP "voided" the original liquidation of the entry on August 17, 2018, CBP reliquidated Entry Number EFU-00011542 on October 26, 2018, within 90 days of the original liquidation, as entered, a so-called "no change" liquidation. CBP asserts it "voided" the reliquidation at an unknown point in time. *See* ECF 6-1 at 136.

55. CBP's August 17, 2018 liquidations of the subject entries classified of the subject merchandise under HTSUS Subheading 2918.14.0000, denying GSP eligibility and assessing Normal Trade Relations duties at the rate of 6 percent *ad valorem* and assessing antidumping duties at the rate of 158.87 percent and countervailing duties at the rate of 8.14 percent pursuant to the *Citric Acid from China Orders*.

56. CBP's August 17, 2018 liquidations appraised the subject merchandise at the value declared on the subject entries.

57. Six weeks <u>after</u> the August 17, 2018 liquidations, CBP issued a Notice of Action Taken (CBP Form 29), dated October 3, 2018. In the Notice of Action Taken, Customs advised Thatcher that entries EFU-00010924, EFU-00011096, and EFU-00011344, would be

assessed AD/CVD per Department of Commerce messages #8213307, dated 8/1/18, A570-937 and #8211318, dated 7/30/1[8], C570-938, at the rate of 156.87% and 8.14% respectively.

58. Thatcher timely protested CBP's liquidation of the subject entries within 180 days of liquidation, on February 12, 2019. Protest Number 3303-19-100054 covered the subject entries.

59. In accordance with 19 U.S.C. § 1515(b) and 19 C.F.R. § 174.22, counsel for Thatcher requested by certified U.S. mail accelerated disposition of Protest Number 3303-19-100054 on September 3, 2019.

60. In accordance with 19 U.S.C. § 1515(b) and 19 C.F.R. § 174.22(d), CBP is deemed to have denied Protest Number 3303-19-100054, effective October 3, 2019, through its failure to issue a decision on Thatcher's protest within 30 days following Thatcher's request for accelerated disposition.

61. Thatcher timely filed its Summons in this matter on March 30, 2020, within 180 days of the deemed denial of its protest.

## COUNT I

### Thatcher's Citric Acid Anhydrous from India Is Not Subject to the *Citric Acid from China* AD/CVD Orders

62. Paragraphs 1 through 61 are restated and incorporated by reference as though fully set forth herein.

63. The subject merchandise is not subject to assessment of antidumping duties and countervailing duties pursuant to the *Citric Acid from China Orders*.

64. By their terms, the *Citric Acid from China Orders* do not apply to citric acid anhydrous produced in India from citric acid monohydrate of unknown origin.

11

65. Commerce has not issued any scope ruling that holds that USP Kosher citric acid anhydrous manufactured in India from citric acid monohydrate of unknown origin is within the scope of the *Citric Acid from China Orders*.

66. Commerce has not conducted a circumvention proceeding finding that USP Kosher citric acid anhydrous manufactured in India from citric acid monohydrate of unknown origin is circumventing the *Citric Acid from China Orders*.

67. CBP cited Commerce Messages 8213307 and 8211318 as bases for its Notice of Action Taken. These Messages comprised automatic liquidation instructions for lifting suspension of liquidation of entries of citric acid from China made during the period covering Thatcher's entries. Complaint Exhibits 6 and 7

68. . Those liquidation instructions do not direct CBP to liquidate entries of citric acid anhydrous manufactured in India from citric acid monohydrate of unknown origin, assessing antidumping and countervailing duties pursuant to the *Citric Acid from China Orders*.

69. CBP's Notice of Action Taken cited no factual basis to support a determination that the citric acid monohydrate from which Posy produced the subject citric acid anhydrous originated in China.

70. Thatcher did not deposit antidumping and countervailing duties on its RFI entries pursuant to any AD/CVD order in effect against any country.

71. CBP's assessment of antidumping and countervailing duties against the subject entries is unlawful in that it lacks any evidentiary or legal basis to support CBP's "suspicion" that the USP Kosher citric acid anhydrous which Thatcher imported from India is a product of China subject to the *Citric Acid from China Orders*.

## COUNT II

### CBP Failed to Follow the Liquidation Instructions Issued by Commerce

72. Paragraphs 1 through 71 are restated and incorporated by reference as though fully set forth herein.

73. When liquidating Thatcher's entries of citric acid from India, CBP failed to implement Commerce's liquidation instructions. CBP's liquidation of Thatcher's subject entries inconsistently with Commerce's instructions was contrary to law.

## COUNT III

### Thatcher's Citric Acid Anhydrous Is Eligible for Duty-Free Treatment Pursuant to GSP As a Product of India

74. Paragraphs 1 through 73 are restated and incorporated by reference as though fully set forth herein.

75. The peer reviewed article, *Characterization of the transition between the monohydrate and the anhydrous citric acid*, describes both the chemical reaction required to transform citric acid monohydrate into citric acid anhydrous and the resulting changes in molecular structure.

76. The thermodynamic chemical reaction through which Posy processed citric acid monohydrate of unknown origin into citric acid anhydrous in India substantially transforms the citric acid monohydrate into a new and different product that originates in India.

77. Citric acid monohydrate is not a liquid, nor is it wet. It is a crystalline solid that contains a chemically-bound water molecule.

78. The application of heat to break molecular bonds constitutes a thermodynamic reaction.

79. A thermodynamic reaction is a chemical reaction.

80. CBP's administrative precedent has consistently found that a chemical reaction results in a substantial transformation of the starting material into a new and different product.

81. Citric acid anhydrous has a new and different name, character and use from citric acid monohydrate.

82. The citric acid anhydrous that is the subject of this action is wholly the growth or produce of India, or it is a substantially transformed product of India for purposes of the GSP.

83. The sum of the cost of beneficiary country materials, plus the direct cost of processing in the beneficiary country, India, equaled at least 35 percent of the appraised value of the subject merchandise.

84. The subject merchandise was imported into the United States directly from India, without entering the commerce of any other country.

85. The imported merchandise was classified in liquidation under HTSUS subheading 2918.14.0000, which at the time of entry was designated as eligible for duty-free treatment pursuant to GSP.

86. At the time of entry, India was a "designated beneficiary country" for purposes of GSP.

87. The subject merchandise qualifies for duty free treatment pursuant to GSP.

### COUNT IV

**CBP Lacked Authority to "Void" Liquidation and Reliquidation of Thatcher's Entries "No Change" As Entered, Without AD/CVD Under the Citric Acid from China Orders and Free of Duty Under GSP As Claimed**

88. Paragraphs 1 through 87 are restated and incorporated by reference as though fully set forth herein.

89. CBP has authority pursuant to 19 U.S.C. §§ 1500 and 1501 to liquidate and reliquidated entries.

90. CBP lacks authority to void a liquidation or reliquidation, *sua sponte,* either leaving the entry unliquidated for an indefinite period or restoring to legal effect a prior unvoided liquidation.

91. Customs lacked legal authority to "void" the original "no change" liquidation of entries EFU-00010924, dated June 5, 2017, and EFU-00011096, dated, July 4, 2017.

92. In the alternative, if CBP possessed authority to "void" the original "no change" liquidations of entries EFU-00010924, dated June 5, 2017, and EFU-00011096, dated, July 4, 2017, the entries were deemed liquidated, as entered, free of duty, by operation of law within one year of the date of entry in accordance with 19 U.S.C. § 1504(a)(1).

93. Customs lacked the legal authority to "void" the "no change" reliquidations of entries EFU-00011344, dated October 10, 2017, EFU-00011476, dated November 21, 2017, and EFU-00011542, dated December 12, 2017.

## **PRAYER FOR RELIEF**

WHEREFORE, Thatcher respectfully requests the Court to enter judgment in its favor, directing Customs to reliquidate the entries subject to this action without antidumping and

countervailing duties, and with the benefit of GSP duty free treatment, and to refund such excess duties paid with interest as provided by law, and to grant Thatcher such additional relief as the Court may deem appropriate.

                                        Respectfully Submitted,

                                        /s/ *Michael K. Tomenga*

                                        NEVILLE PETERSON LLP
                                        Counsel for Plaintiff
                                        1400 16th Street, N.W., Suite 350
                                        Washington DC 20036
                                        (202) 776-1148 (Direct)
                                        (202) 669-6887 (Mobile)
                                        (202) 861-2924 (Fax)

By:    John M. Peterson
        Michael K. Tomenga
        Lawrence J. Bogard

March 31, 2022